# Exhibit C



**165 W 46th St**
**New York, NY 10036**

# SECURITY AGREEMENT

**Agreement** made on February 3, 2022, between **ACTORS' EQUITY ASSOCIATION**, hereinafter referred to as "**Equity**", and **Bernard Abrams** hereinafter referred to as "**Guarantor**", and **Paradise Square Production Services Inc. by Bernard Abrams** hereinafter referred to as "**Producer**". The subject of this agreement is the theatrical production known as **Paradise Square - Production**, hereinafter referred to as "**Play**."

1. The Guarantor and Producer do hereby agree to deposit or deliver to Equity Security in the sum of **$299,711.00** as and in the form of **Cash (Wire Transfer)** the receipt of which is hereby acknowledged for the full and immediate payment of all monies due or that may become due the Actors or Equity. As used herein, any reference to monies, amounts, payments due to actors, or to salary lists, shall be deemed to include monies due to the Equity-League Pension and Health Trust Funds. No interest in this Security Agreement, or in the Security deposited hereunder, may be assigned, in whole or in part, by the Guarantor or Producer. Any assignment or attempted assignment in any form whatsoever shall be a breach of this Agreement.

2. The Guarantor and Producer hereby warrant and represent that the total weekly salary list of the Actors in said Play is not over **$130,636.28** and that if the total weekly salary list is increased, immediate written notice thereof will be given Equity.

3. The Guarantor and Producer agree at all times to keep on deposit with Equity, Security in an amount satisfactory to Equity but not to exceed "Security" as herein defined; and further agree, if the weekly salary list of the play is increased, an additional amount of Security will be deposited with Equity.

4. If Equity collects, applies, or pays over any Security, or pays or causes to be paid to the Actors or on their behalf any amount or amounts out of Security, after failure by Guarantor and Producer to pay such amounts to the Actors or on their behalf as and when due under Individual Employment Agreements or applicable collective bargaining agreements, Guarantor and Producer will, within twenty-four hours after such payment or payments by Equity, deposit additional security with Equity, satisfactory to it, equal to the amount or amounts to be collected, applied or paid by it, so that said Security shall be made good and kept at the original amount as set forth in paragraph 3, above; or if the salary list is increased, at the increased amount. Such collection or payment by Equity out of Security does not waive any other remedy for such breaches of Individual Employment Agreements or collective bargaining agreements by Guarantor or Producer.

5. If monies or any part thereof are not paid as and when due, or if there is any breach of the terms hereof or of any Individual Employment Agreement or collective bargaining agreement, or of any Rules which are a part thereof, by Guarantor or Producer, or if Guarantor or Producer has made any false statement or misrepresentation herein, Equity, in its discretion, may require the Actors to terminate their employment under Individual Employment Agreements without notice to Guarantor or Producer, and without liability on its part or on the part of the Actors, and also any and all the Actors may terminate their employment; and in any such events Security may be collected, applied, or paid out by Equity and apportioned in its sole judgment without notice to Guarantor or Producer and for the payment of any and all amounts the Guarantor and Producer shall be liable to the Actors and Equity, and will pay them as though the Actors had been discharged by Producer or Guarantor without notice.

6. Notwithstanding the deposit of Security, Guarantor and Producer will promptly pay to the Actors any and all sums due under Individual Employment Agreements and collective bargaining agreements, and should Guarantor or Producer not do this, Equity may without notice or liability require any and all Actors to terminate the Individual Employment Agreements forthwith regardless of any payment by Equity to Actors or the receipt by Actors of any sum out of Security; but on final accounting in accordance with the terms hereof, the Guarantor or Producer will receive credit for such payment out of Security as herein provided.

7. Upon any failure of the Guarantor or Producer to make payments, when due under Individual Employment Agreements or collective bargaining agreements, Equity may as and when it deems it advisable and in its sole discretion and without notice to Guarantor or Producer, said notice being hereby expressly waived, sell or dispose of at public or private sale and as it might deem best, any and all of said Security and without prior notice to or demand upon Guarantor or Producer, Equity is authorized to demand and collect from any bonding company or under any bond or undertaking any sum or sums which it certifies to be due all and any said Actors, and Equity is further empowered to pay out any sums, receipts, or intake from any of the aforegoing in such amounts and in such proportion among them as it deems proper.

8. All Individual Employment Contracts and collective bargaining agreements heretofore entered into, or which may hereafter be entered into, in connection with said Play are hereby made subject to all terms and conditions herein; all of which are agreed to be material and of the essence of the said Individual Employment Agreements, and as amended by these provisions, all such present and future employment contracts shall be and remain in full force and effect.

9. Where the Guarantor is a person other than the Producer, he/she hereby adopts each and every Individual Employment Agreement and collective bargaining agreement as his/her own, to the extent of being liable thereon for the carrying out of the same to the full extent of the Security provided for herein and the full amount thereof, and said Guarantor hereby specifically waives any and all notice of default on the part of the Producer and notice of nonpayment or of any other act of said Producer and agrees that his legal relation in said Play is such that he/she has notice as principal of all acts and defaults of the Producer, and that no modifications, changes, omissions, waivers, additions, or extensions to, of, or in the Security Agreement and any agreement made in connection therewith, or of any Individual Employment Agreement whether made with or without notice to him/her or further assent by him/her , shall affect his/her liability hereunder, and he/she agrees to remain bound under this Security Agreement notwithstanding such changes, modification, waiver, additions, or extensions.

10. Upon satisfactory proof furnished by the Guarantor or Producer to Equity that all payments and obligations to all the Actors have been made and complied with under all Individual Employment Agreements and collective bargaining agreements and under this agreement, and that no disputes exist between the Producer and Guarantor and any Actor, or with Equity, arising out of any or either said agreements, Equity will return and surrender all Security then remaining in its possession or control in connection with said Play and will release any bond then in force in connections with said Play which has been furnished by the Guarantor or Producer.

11. Should the interest or relation of the Guarantor or Producer to the Play herein, either in whole or in part, cease or be changed, but should said Play continue to be produced through any arrangement or agreement with Guarantor or Producer or with the consent of either, this agreement shall continue in full force and effect and apply to, and be security for any and all Individual Employment Agreements and collective bargaining agreements entered into by any person or persons, firm or corporation in relation to said Play, unless the Guarantor or Producer causes or procures to be furnished in lieu of the Security herein and of this agreement, a deposit, satisfactory to Equity, by those interested in the continuance of the Play, equal to the amount and value of the Security furnished herein and hereunder and unless such other person or persons, satisfactory to Equity, execute with Equity an agreement identical herewith.

12. Equity is hereby authorized to deduct its reasonable costs, but not less than two hundred ($200.00) dollars for each occasion that it is required to call upon the Security in order to make payments required hereunder.

13. If the undersigned or either of them is unable to pay salaries when due and if he/she will so notify Equity, Equity will take steps to pay the salaries and other obligations of the Producer or Guarantor as contained in the Definition of "Security" as soon as the proper arrangements can be made in all cases at least twenty-four hours' notice shall be given.

14. The undersigned admit notice that no Equity employee has authority to make or permit any waivers, changes, or additional or outside representations or promises in connections with this agreement. Any alteration or revision of the Agreement must be in writing.

15. Individual Signature Required. The Producer and Guarantor each severally agree that his/her signature on the agreement, if in a representative capacity, is also an individual signature binding him/her individually to this agreement. This provision is of the essence of this contract.

**ACTORS' EQUITY ASSOCIATION**

By: *Stephanie Pezzello*
Stephanie Pezzello - Eastern Bonding Director

Februry 9, 2022
Date

**Paradise Square Production Services Inc.**

By: _[signature]_
Bernard Abrams, Producer

By: _[signature]_
Bernard Abrams, Guarantor

_[signature/date]_
Date

## DEFINITIONS

"Actor" includes each and every member of Equity who has entered or who hereafter may enter into an Individual Employment Agreement with the Guarantor or Producer producing or controlling the production the Play.

"Equity Member" includes members of Actors' Equity Association.

"Producer" includes the individual, firm, partnership, or corporation, or any combination thereof, producing or controlling the production of said Play who has entered into an Individual Employment Agreement or who may hereafter enter into an Individual Employment Agreement with any of said Actors.

"Security" includes any and all cash, securities of every character, surety or other bonds and undertakings, and other forms of security furnished or given to or deposited with Equity hereunder in connection with the Play under this or any other agreement; and shall be deemed to be an amount equal not only to twice the weekly salary or compensation of the Actors but also a sum of money equal to twice the amount required to be paid weekly to the Equity-League Pension and Health Trust Funds pursuant to the applicable Collective Bargaining Agreement, as well as other payments to be made on the Actors' behalf, including the cost and expense of the transportation of the Actors and their baggage as provided in their Individual Employment Agreements and also any and all damages arising by reason of any and all breaches of said Individual Employment Agreements or collective bargaining agreements, and also any and all reasonable disbursements and expenses, including fair and reasonable legal expense, laid out, expended, or incurred by Equity in the working out or enforcement of this agreement or of said Individual Employment Agreements.

"Guarantor" includes the individual, firm, partnership or corporation, or any combination thereof, who has posted Security in accordance with the terms of the Security Agreement. The Guarantor shall have the same responsibility and liability as the Producer.

"Individual Employment Agreement" means any agreement of employment heretofore or hereafter entered into between an Actor and the Guarantor or Producer in relation to the Play.

Wherever the term "Producer" is used it shall be deemed also to mean "Manager" as that term is used in the applicable collective bargaining agreement.